**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
**Keith Reed**, OSB No. 205506
kreed@justicelawyers.com
Johnson Johnson Lucas & Middleton P.C.
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for the Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **JOY HANNEMAN,** | Case No. 6:21-cv-00456 |
| Plaintiff, | **COMPLAINT** |
| v. | Title VII, ORS 659A.030, ORS 659A.199, ORS 659A.865 |
| **MCKENZIE-WILLAMETTE REGIONAL MEDICAL CENTER ASSOCIATES, LLC** | _Demand for Jury Trial_ |
| Defendant. | |

### INTRODUCTORY STATEMENT

**1.**

Defendant McKenzie-Willamette Regional Medical Center Associates, LLC subjected Plaintiff Joy Hanneman and other female nurses to severe and on-going sexual harassment, which included unwanted sexual touching and lewd, degrading comments by Hanneman's supervisor. Hanneman disclosed the harassment to a manager who treated the report as a joke and failed to investigate. Hanneman and two female colleagues later reported the harassment to

PAGE 1- COMPLAINT

Human Resources, which allowed the harasser to retain his position and took no action to protect Hanneman. Defendant later allowed the harasser to resign and retaliated against Hanneman. This is an action arising under Title VII, ORS 659A.030, ORS 659A.865, and ORS 659A.199, challenging Defendant's sex-based discrimination and retaliation against Hanneman.

## PARTIES

2.

Joy Hanneman is a resident of Pleasant Hill, Oregon. She is female.

3.

McKenzie-Willamette Regional Medical Center Associates, LLC, doing business as McKenzie-Willamette Medical Center, is a 113-bed healthcare facility located in Springfield, Oregon. McKenzie-Willamette Medical Center is currently owned by Quorum Health Corporation.

4.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in Lane County, Oregon.

## FACTS

6.

Defendant hired Joy Hanneman as a Registered Nurse in August 2015. Hanneman began working in the Post-Anesthesia Care Unit (PACU) in October 2017.

7.

Hanneman loved her work at the PACU. She received positive feedback on her performance, including an August 2018 evaluation in which she was marked as "exceeding standards" in 27 categories and "consistently achieves standards" in six categories.

PAGE 2- COMPLAINT

**8.**

Starting in approximately September 2018, Hanneman's supervisor in the PACU, Brian Cramer, began making comments about how she was "his type." He referred to her as "sweetness," "baby," and other similar names. He put his arm around her, placed his hand on her lower back, and touched her in other ways without her consent. He stood very close to her and refused to move away. He told her he loved it when she "talk[ed] dirty" to him. He suggested that Hanneman have sex with him on a gurney. Hanneman told Cramer to stop, but he ignored her.

**9.**

In March 2018, after Cramer suggested that Hanneman have sex with him on the gurney, Hanneman spoke with Cramer's supervisor, Deborah Schoenberg, about Cramer's unwanted sexual touching and comments. Schoenberg laughed and said that Cramer would end up getting in trouble with Human Resources someday. Upon information and belief, Schoenberg took no corrective action. Cramer continued to engage in the unwanted sexual conduct, harassing Hanneman verbally and physically whenever they were on the same shift, which was multiple times per week.

**10.**

In June 2019, Hanneman's co-worker Stacey St. Germain reported to Human Resources (HR) that Cramer was sexually harassing both her and Hanneman. Hanneman then disclosed specific examples of the harassment to HR, as well as the names of people who had witnessed it. Hanneman told HR that she was uncomfortable and that she wanted the harassment to stop. A third female employee also disclosed to HR that Cramer was sexually harassing her.

///

PAGE 3- COMPLAINT

**11.**

Cramer was briefly absent from work but soon returned to his previous position and schedule. HR did not inform Hanneman about the outcome of the investigation, nor did it take any measures to protect Hanneman. Worried about continuing harassment and potential retaliation, Hanneman surrendered her shifts that would have required her to work alone with Cramer.

**12.**

After he returned to work, Cramer immediately resumed harassing Hanneman, even more severely than before. He touched her on her lower back, hands, and hair, and he came up behind her and embraced her. He continued making lewd and degrading comments. On one occasion Hanneman needed Cramer to authorize a medication release. The medication dispenser requires two staff people to enter their fingerprints by putting their fingers into a slot. When Hanneman asked Cramer to "put his finger in," Cramer replied, "Baby, I've been waiting a long time for you to ask me that."

**13.**

Hanneman went to HR again in mid-July 2019 and spoke to Christina Grimes, the risk management officer. Hanneman told Grimes that she wanted Cramer's sexual comments and touching to stop. She told Grimes that Cramer had put his hands on her at least once during every shift since the previous HR meeting. Grimes told Hanneman that she should "change her body language."

**14.**

Cramer's physical and verbal harassment continued. He continued to touch Hanneman without her consent on a daily basis, even when she continually asked him to stop. When

Hanneman saw a white substance on the countertop and asked those around her what it was, Cramer replied, "I got excited."

15.

Throughout the time he was harassing Hanneman, Cramer engaged in similar unwanted sexual behavior towards Stacey St. Germain and other female co-workers. On one occasion he told St. Germain that he would "bang [her] like a pinky toe on a coffee table." He later boasted that he would "spread [Stacey] out on the table like homework and do her all night long."

16.

In September 2019, after Hanneman informed Defendant that she had retained an attorney, Defendant began a second investigation of Cramer. Upon information and belief, Defendant found the sexual harassment allegations to be substantiated and permitted Cramer to resign.

17.

On September 30, 2019, Hanneman sent Defendant a copy of a draft complaint to the Bureau of Labor and Industries (BOLI) that detailed the sexual harassment she had experienced.

18.

Following the September 2019 investigation and Hanneman's disclosure of her draft BOLI complaint, manager Jon Ockander and other managers in the PACU began treating Hanneman differently from other employees. In early October, Ockander abruptly stopped assigning Hanneman charge nurse coverage shifts. Ockander's general practice – which he continued to follow in relation to nurses other than Hanneman – was to assign those shifts, which are compensated at a higher rate, to the first nurse to arrive on the unit. Ockander and other managers also stopped letting Hanneman know when they were short-staffed and needed

PAGE 5- COMPLAINT

coverage for regular shifts. Hanneman reported to HR that she was being retaliated against, but HR took no action.

19.

Managers and supervisors began making frequent negative comments about Hanneman in front of staff, for example, suggesting that they could not say or do certain things because she would report them. Some of Hanneman's co-workers began treating her in a cold and hostile way.

20.

On December 16, 2019, Hanneman applied for a full-time nursing position in the PACU. Although she had been working in the PACU for more than two years at that time, she was turned down for the position without an interview. Upon information and belief, Defendant then offered the position to an RN with no PACU experience and limited Intensive Care Unit (ICU) experience.

21.

Hanneman filed a complaint with BOLI on January 7, 2020, alleging sexual harassment. BOLI cross-filed with the EEOC.

22.

On January 27, 2020, Manager Ockander presented Hanneman with an evaluation marking Hanneman as "exceeding standards" in only two categories, and stating that Hanneman needed to improve in the area of "positive communication through the appropriate channels." Ockander suggested that Hanneman had acted inappropriately when she reported to HR, and not to Ockander, that she was being retaliated against. Hanneman also learned at that meeting that Defendant was reducing her hours and eliminating her short-hour status, which had enabled her to pick up shifts before other per diem employees.

**23.**

In addition to cutting her hours and eliminating her short-hour status, Defendant continued to reduce Hanneman's access to shifts by not informing her or not assigning her to available shifts.

**24.**

On February 5, 2020, Hanneman filed a second complaint with BOLI, alleging retaliation. BOLI cross-filed with the EEOC.

**25.**

BOLI issued a Notice of Substantial Evidence Determination on January 7, 2021, finding evidence that Defendant subjected Hanneman to sexual harassment and failed to take immediate and appropriate corrective action, in violation of ORS 659A.030. As to those claims, BOLI issued a 90-day right to sue notice on January 7, 2021. On February 5, 2021, BOLI issued a second Notice of Substantial Evidence, finding evidence that Defendant subjected Hanneman to different terms and conditions of employment and interfered with employment opportunities in retaliation for her reports of sexual harassment and complaints to BOLI. As to those claims, BOLI issued a 90-day right to sue notice on February 5, 2021.

**26.**

On February 10, 2021, Defendant sent Hanneman letter stating that she was not meeting her minimum shift requirements, and that Defendant therefore assumed she wished to resign. It instructed that, if it did not hear from Hanneman, it would terminate her employment. Other employees who did not meet the minimum shift requirement were not asked to resign. Hanneman, who was unable to meet the minimum requirement because Defendant's retaliation had severely limited her access to shifts, was forced to either resign or face termination. Her last day as Defendant's employee was March 4, 2021.

**FIRST CLAIM FOR RELIEF**
**TITLE VII – 42 U.S.C. SEC. 2000E ET SEQ**
**DISCRIMINATION BECAUSE OF SEX, RETALIATION**

Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

**27.**

Defendant subjected Hanneman to unwelcome sex-based harassment that was sufficiently severe and pervasive to alter the conditions of her employment and create a hostile working environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-2(a)(1). It knowingly refused to take corrective measures reasonably calculated to end the harassment. It then further discriminated and retaliated against Hanneman for reporting the harassment by subjecting her to a hostile environment, reducing and denying her access to shifts, eliminating her short-hour status, denying her an opportunity for a promotion, and forcing her to resign, in violation of 42 U.S.C. sec. 2000e-3.

**28.**

Hanneman lost valuable wages and benefits because of Defendant's discrimination. She also suffered humiliation, injustice, and other emotional distress.

**29.**

Hanneman is entitled to backpay, compensatory damages in an amount to be determined by the jury, reinstatement, and a promotion and accompanying raise in salary.

**30.**

Defendant's discrimination was intentional or taken in reckless disregard for Hanneman's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and to deter it and others from acting in a similar manner in the future.

**31.**

Hanneman is further entitled to her reasonable attorney fees and costs.

PAGE **8**- COMPLAINT

## SECOND CLAIM FOR RELIEF
### ORS 659A.030 – DISCRIMINATION BECAUSE OF SEX, RETALIATION

Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

### 32.

Defendant subjected Hanneman to unwelcome sex-based harassment that was sufficiently severe and pervasive to alter the conditions of her employment and create a hostile working environment in violation of ORS 659A.030. It knowingly refused to take corrective measures reasonably calculated to end the harassment. It then further discriminated and retaliated against Hanneman for reporting the harassment by subjecting her to a hostile work environment, reducing and denying her access to shifts, eliminating her short-hour status, denying her an opportunity for promotion, and forcing her to resign.

### 33.

Hanneman lost valuable wages and benefits because of Defendant's discrimination. She also suffered humiliation, injustice, and other emotional distress.

### 34.

Hanneman is entitled to backpay, compensatory damages in an amount to be determined by the jury, reinstatement, and a promotion and accompanying raise in salary.

### 35.

Defendant's discrimination was intentional or taken in reckless disregard for Hanneman's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and to deter it and others from acting in a similar manner in the future.

### 36.

Hanneman is further entitled to her reasonable attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### ORS 659A.199
### WHISTLEBLOWING

Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

**37.**

Defendant retaliated against Hanneman for reporting a violation of a rule, regulation, and/or law, by subjecting her to a hostile work environment, reducing and denying her access to shifts, eliminating her short-hour status, denying her an opportunity for promotion, and forcing her to resign, in violation of ORS 659A.199.

**38.**

Hanneman lost valuable wages and benefits because of Defendant's retaliation. She also suffered humiliation, injustice, and other emotional distress.

**39.**

Hanneman is entitled to backpay, compensatory damages in an amount to be determined by the jury, reinstatement, and a promotion and accompanying raise in salary.

**40.**

Defendant's retaliation was intentional or taken in reckless disregard for Hanneman's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and deter it and others from acting in a similar manner in the future.

**41.**

Hanneman is further entitled to her reasonable attorney fees and costs.

### FOURTH CLAIM FOR RELIEF
### ORS 659A.865
### Retaliation for filing a BOLI complaint

Plaintiff repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

**42.**

Defendant retaliated against Hanneman for filing a complaint with the Oregon Bureau of Labor and Industries, by subjecting her to a hostile work environment, reducing and denying her access to shifts, eliminating her short-hour status, denying her an opportunity for promotion, and forcing her to resign, in violation of ORS 659A.865.

**43.**

Hanneman lost valuable wages and benefits because of Defendant's retaliation. She also suffered humiliation, injustice, and other emotional distress.

**44.**

Hanneman is entitled to backpay, compensatory damages in an amount to be determined by the jury, reinstatement, and a promotion and accompanying raise in salary.

**45.**

Defendant's retaliation was intentional or taken in reckless disregard for Hanneman's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and deter it and others from acting in a similar manner in the future.

**46.**

Hanneman is further entitled to her reasonable attorney fees and costs.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and award the following relief:

1. Declare that Defendant engaged in unlawful sex discrimination and retaliation against Joy Hanneman;

2. Issue an order reinstating and promoting Joy Hanneman, and elevating her salary and benefits to the levels they would be in the absence of Defendant's discrimination and retaliation;

3. Award back pay to compensate Joy Hanneman lost wages and benefits, together with prejudgment interest;

5. Award compensatory damages in an amount to be determined by the jury;

6. Award punitive damages in an amount to be determined by the jury; and

7. Grant all other relief as this Court deems just and proper.

Respectfully submitted this 25th day of March, 2021.

JOHNSON JOHNSON LUCAS & MIDDLETON, P.C.

/s/Caitlin V. Mitchell
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Keith Reed**, OSB No. 205506
kreed@justicelawyers.com
Johnson Johnson Lucas & Middleton P.C.
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for the Plaintiff